UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK MCCLESKEY TRUSTEE,<br>INDIANA STATE COUNCIL OF<br>PLASTERERS AND CEMENT MASONS<br>HEALTH AND WELFARE AND PENSION<br>FUNDS, | )<br>)<br>)<br>)<br>) | No. 1:15-cv-01284-LJM-DKL |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CWG PLASTERING, LLC, a Missouri<br>Limited Liability Company, | )<br>) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>

This matter is before the Court on Plaintiffs' Mark McCleskey Trustee, Indiana

State Council of Plasterers and Cement Masons Health and Welfare and Pension Funds

(collectively the "Funds") and Defendant's CWG Plastering, LLC ("CWG") Cross-Motions

for Summary Judgment. Dkts. 56, 58. The Funds allege in their First Amended Complaint

that CWG is responsible for the debt owed to them by Walter Gianino d/b/a Gianino

Plastering ("Gianino Plastering") under theories of successor liability and the alter ego

doctrine. Dkt. 20. Gianino Plastering entered into a collective bargaining agreement that

required it to make payments to the Funds, but it later became delinquent on payments.

The Funds sued for the money owed under the agreement and received a default

judgment against Gianino Plastering in the amount of $196,940.73, which remains

unsatisfied. *See McCleskey v. Gianino*, 1:11-cv-00791-JMS-DKL, Dkt. 33. Following the

default judgment, Gianino Plastering went out of business and Walter Gianino's son, Curt

1

Gianino, started a separate plastering business, CWG. The Funds allege that CWG is a successor to Gianino Plastering and therefore responsible for the judgment levied against it.

Because the undisputed facts demonstrate that CWG is neither the alter ego of Gianino Plastering nor liable as its successor, the Funds' motion for summary judgment is **DENIED** and CWG's motion for summary judgment is **GRANTED**.

## I. BACKGROUND[1]

Although the parties disagree on some minor details, after a review of the parties' statements of undisputed material facts, as well as the attached records, the substantive facts in this matter are not in dispute.

## A. GIANINO PLASTERING

Walter Gianino ("Walter") established Gianino Plastering in the metropolitan St. Louis area in 1979. Dkt. 64, ¶¶ 1-2. Walter's son, Curt, joined Gianino Plastering around 1994 as a plasterer. *Id.*, ¶¶ 3-4. Gianino Plastering entered a union agreement with Plasterers Local 3 in St. Louis, Missouri, beginning in October 2000. *Id.*, ¶ 6. Walter signed a Memorandum of Agreement and Collective Bargaining Agreement ("CBA") with Plasterers Local 3 on February 9, 2009. *Id.*, ¶ 7. Pursuant to the CBA, signatory employers must pay benefits to the Funds for each hour worked by plasterer employees covered by the union agreement. Dkt. 57, ¶ 17.

Gianino Plastering became delinquent in his benefit contributions to the Funds, which led to the Funds filing a lawsuit. Dkt. 64, ¶ 28; *See McCleskey v. Gianino*, 1:11-cv-

---

[1] The Court incorporates by reference all exhibits cited in the parties' statements of undisputed material facts.

00791-JMS-DKL.  On July 27, 2012, Magistrate Judge LaRue recommended a default judgment in favor of the Funds and against Gianino Plastering in the amount of $196,740.73.  *McCelskey v.* Gianino 1:11-cv-00791-JMS-DKL, Dkt. 31.  On August 14, 2012, Chief Judge Magnus-Stinson adopted this recommendation and entered judgment on behalf of the Fund.  *Id.*, Dkts. 32, 33.  The prior judgment against Gianino Plastering remains unpaid.  Dkt. 64, ¶ 30.  Following the initial recommendation for judgment on behalf of the FundS at the end of July 2012, Walter ceased operations at Gianino Plastering.  *Id.*, ¶ 35.

Following the closure of Gianino Plastering, Walter incorporated under a different name, Gianino and Son, in part to allow him to collect on outstanding receivables owed to Gianino Plastering.  *Id.*, ¶ 122.  Gianino and Son, however, did not perform any plastering work or receive any money.  *Id.*

### B. CWG

CWG was formed on August 14, 2012, as a Missouri limited liability company that performs plastering work in St. Louis.  *Id.*, ¶¶ 9-10, 12.  Curt Gianino is the owner and sole member of CWG.  *Id.*, ¶ 11.  Curt initially invested $5,500.00 to capitalize CWG in August 2012.  *Id.*, ¶ 77.  Curt is also the only person who shares in the profits and losses of CWG.  Dkt. 66, ¶ 32.  CWG leased two vehicles from a third party that were previously used by Gianino Plastering.  Dkt. 57, Ex. BB, Deposition of Curt Gianino ("Q. When did your company first begin using the two Fords?  A. When I first came in business and started my company, Mr. Brand came to me and said I could use the vehicles with a fee as long as I had insurance on them.").  CWG acquired no equipment from Gianino

Plastering and purchased its own professional equipment from third-party vendors at commercial prices. Dkt. 61-1, ¶ 14.

James Gildehaus worked for Gianino Plastering from 2005 until at least the end of July 2012. Dkt. 64, ¶ 50. Gildehaus began working for CWG in August 2012 and received his first CWG paycheck on August 17, 2012. *Id.*, ¶ 49. Gildehaus' last Gianino Plastering paycheck was dated August 10, 2012. *Id.*, ¶ 50. Gildehaus performed as an unskilled laborer for Gianino Plastering, but was trained to do plastering work for CWG by Curt following CWG's formation. Dkt. 61-1, ¶ 24. When asked why he stopped working for Gianino Plastering, Gildehaus recalled a conversation wherein Curt stated, "Hey, [Walter]'s being sued and I'm starting my own company now and [Walter]'s no longer in the picture." Dkt. 64, ¶ 95.

Dan Giger was employed by Gianino Plastering for at least two years before Walter closed the business. *Id.*, ¶ 27. Giger received his last paycheck from Gianino Plastering on August 10, 2012. *Id.*, ¶ 53. Giger started working for CWG in August 2012, and received his first CWG paycheck on August 24, 2012. *Id.*, ¶¶ 52, 54.

Curt received his last paycheck from Gianino Plastering on August 10, 2012, and his first CWG paycheck on August 17, 2012. *Id.*, ¶¶ 55-56. In 2012, the only persons on CWG's payroll were Curt, Giger, and Gildehaus. *Id.*, ¶ 110.

Walter began receiving pay from CWG in August 2013. *Id.*, ¶ 11. Walter has not contributed to the finances of CWG. Dkt. 61-1, ¶ 13. Walter does no hiring or supervision of CWG employees and receives no income from CWG, except payment for hours worked at an hourly rate. *Id.*, ¶¶ 18-19. Walter has not been employed with CWG since September 2016. *Id.*, ¶ 17.

CWG and Gianino Plastering had at least eight of the same customers: HBD Contracting, Norbert Markway Construction, Minton Homes, Glen Alspaugh Company, 625 S. Skinker Condominium Association, Steven and Sally Gelfman, Marion and Naomi Balsalmo, and Douglas and Shari Coplan. Dkt. 64, ¶ 117. CWG and Gianino Plastering also shared the same insurance broker and accountant. *Id.*, ¶¶ 80-81.[2] Finally, CWG and Gianino Plastering use the same material suppliers. *Id.*, ¶ 71.

Curt derived no profit from Gianino Plastering and does not owe it any money. Dkt. 61-1, ¶ 31.

## C. LJPP JOB

Gerald Hill is a project manager for HBD Construction, Inc. ("HBD"), a general contractor in St. Louis, Missouri. *Id.*, ¶ 36. In the Fall of 2012, Hill was in charge of obtaining a plastering subcontractor for a project known as "LJPP," located at 904 Weidman Road in Chesterfield, Missouri. *Id.*, ¶ 37. In June 2011, Gianino Plastering submitted a bid for the LJPP job and continued to submit documents for the bid through

---

[2] The parties dispute both whether CWG and Gianino Plastering shared the same accountant for business purposes and the date that the accountant, Sharamitaro & Associates, P.C., was retained. Because CWG failed to properly deny the allegation by citing to evidence in the record, it is deemed admitted. In fact, all of CWG's denials and/or qualifying admissions are without any citation to evidence in the record. This is contrary to Local Rule 56-1(e), which requires a party to support each fact asserted with a discovery response, deposition, affidavit, or some other admissible evidence in the record or in an appendix to the brief. Local Rule 56-1(e) also states that "[t]he citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence." *See also* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record …"). CWG simply denies the Funds' facts and claims an alternative version of each event without citation or evidence of record. Thus, aside from the facts asserted in the supplemental affidavit provided by Curt Gianino (Dkt. 61-1), the Court construes all denials not properly supported by evidence in favor of the Funds.

April 2012. *Id.*, ¶ 38. Hill knew of Walter Gianino and Gianino Plastering from previous HBD projects. *Id.*, ¶ 39. By July 9, 2012, Gianino Plastering was awarded the LJPP plastering contract. *Id.*, ¶ 40. Sometime around July 27, 2012, Walter and Curt Gianino met with Hill and advised him that Gianino Plastering closed, but indicated that Curt would be opening a new business and would honor the original Gianino Plastering bid. *Id.*, ¶ 41. Hill awarded CWG the work and sent CWG a revised subcontract on August 17, 2012, which Curt returned to him the same day. *Id.*, ¶¶ 42-43. The plaster work on the LJPP project began in July 2012. *Id.*, ¶ 44. On August 22, 2012, HBD tendered its first payment to CWG on the LJPP project in the amount of $28,800.00. *Id.*, ¶ 45. As the LJPP project continued, new plastering requirements arose and Hill negotiated additional work and payment for CWG with Curt. Dkt. 57-7, ¶ 9. This was CWG's first customer-payment-deposit. Dkt. 64, ¶ 76.

### D. 546 DONNE PROJECT

Thomas Bourgeois is a partner at the firm Glen Alspaugh Company, LLP ("Alspaugh"), where his duties include procurement of plastering subcontractors on Alspaugh projects. *Id.*, ¶¶ 96-97. Bourgeois utilized Gianino Plastering whenever it required plastering work. *Id.*, ¶ 98. Bourgeois' contact at Gianino Plastering was Walter. *Id.* In January 2014, Alspaugh required plastering work at its 546 Donne project in St. Louis, Missouri. *Id.*, ¶ 99. Bourgeois contacted Walter about the 546 Donne project and believed that he had retained the services of Gianino Plastering to complete the plastering for the project. *Id.*, ¶ 100. Sometime thereafter, Alspaugh received an invoice from CWG, a company that he had not heard of prior to the invoice. *Id.*, ¶¶ 101-02. Bourgeois never spoke to Curt Gianino about the 546 Donne project. *Id.*, ¶ 103.

## II. <u>SUMMARY JUDGMENT STANDARD</u>

On cross-motions for summary judgment, the Court must apply the ordinary standards pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") as to each individual motion. *See McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 n.4 (7th Cir. 2008); *Chevron U.S.A. v. Mobil Prod. Tx. & N.M.*, 281 F.3d 1249, 1252-53 (Fed. Cir. 2002). In other words, each motion must be considered separately and the nonmoving party must be given the benefit of favorable inferences. *Chevron*, 281 F.3d at 1253.

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990). Rule 56(a) provides in relevant part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a fact either is or cannot be genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Goodman*, 621 F.3d at 654; *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court draws all reasonable inferences from undisputed facts in favor of the nonmoving party and views the disputed evidence in the light most favorable to the nonmoving party. *See Berry v. Peterman*, 60 F.3d 435, 438 (7th Cir. 2010); *Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the Court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994). "If the nonmoving party fails to establish the existence of an element essential to [its] case, one on which [it] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

## III. <u>DISCUSSION</u>

The Funds seek relief under the alter ego doctrine and successor liability. They argue that CWG is merely a continuation of Gianino Plastering in a different corporate form and therefore, Gianino Plastering's liability should be imputed to CWG.

CWG first argues that insufficient facts exist to establish either of the Funds' theories, and therefore it should be granted judgment as a matter of law. CWG then contends that this Court lacks personal jurisdiction over it. Further, CWG asserts that Gianino Plastering's monetary obligations under the CBA were discharged in bankruptcy, and therefore this Court does not have jurisdiction over the claims. Finally, CWG contends that adjudication of post-bankruptcy conduct of an alter ego lies within the exclusive jurisdiction of the National Labor Relations Board ("NLRB").

### A. PERSONAL JURISDICTION

CWG asserts that this Court lacks personal jurisdiction over it because CWG does not do business in Indiana, none of its employees or officers reside in Indiana, and CWG was not a signatory to the CBA. Dkt. 61, pp. 4-5. Although CWG denied the Funds' personal jurisdiction allegations in its Answer filed on May 16, 2016, Dkt. 22, p. 6, CWG waited until filing its Motion for Summary Judgment on February 2, 2017, to raise the affirmative defense. While the Court notes that CWG filed a Motion to Dismiss on November 27, 2015, asserting, *inter alia*, a lack of personal jurisdiction, Dkt. 14, CWG's motion was denied as moot on June 20, 2016, after the Funds filed their Amended Complaint. Dkt. 27. CWG did not again raise the matter until this stage in the litigation, and participated in various hearings conducted by this Court, as well as discovery, after its motion was deemed moot. *See* dkts. 32, 44, 47, 50, 53. CWG has required effort of

the Court in addition to providing the expectation to the Funds that it would defend this suit on the merits, which in turn results in a waiver of its personal jurisdiction defense. *See Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) ("To waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking.").

Moreover, CWG provides no contextual analysis and does not cite to any relevant authority to support the relief it seeks, *see* Dkt. 61, at 4-5, let alone reply to the Funds' assertion that CWG has forfeited its personal jurisdiction argument. This is simply not enough. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived …").

## B. BANKRUPTCY

CWG also contends that the issue of collecting Gianino Plastering's debt, has already been foreclosed in bankruptcy.[3] Dkt. 61, at 5. CWG cites to various cases in other jurisdictions and simply concludes that principals of res judicata and collateral estoppel bar the instant claims against CWG. It has been established, however, that a successor liability claim "does not directly implicate the Bankruptcy Code, since the underlying bankruptcy proceeding is long over." *Chi. Truck Drivers, Helpers &*

---

[3] CWG notes that this matter "was discharged in [bankruptcy]. See Exhibit E, attached and incorporated by reference as if expressly set forth herein." Dkt. 61, p. 5. CWG fails, however, to attach any documentation with its brief. Nonetheless, the Fund does not dispute Gianino Plastering's discharge in debt and therefore the Court will assume that Gianino Plastering's debt was discharged in bankruptcy.

*Warehouse Workers Union Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 50 n. 2 (7th Cir. 1995). The *Tasemkin* court went on to conclude that a pension fund may pursue a successor liability claim against a bankrupt entity's tranferee, noting that "a second chance is precisely the point of successor liability." *Id.* The court further noted that a significant factor in determining successor liability is any recovery of the pension fund debt in the original bankruptcy proceeding. *Id.* Here, there was no such recovery in the bankruptcy proceeding. *See* Dkt. 64, ¶ 30. This successor liability allegation against CWG is not barred by the bankruptcy discharge of Gianino Plastering.

## C. NLRB

CWG states that "[t]o the extent that this Complaint seeks to adjudicate post-bankruptcy conduct of an alter-ego, such claims are ordinarily the exclusive jurisdiction of the National Labor Relations Board." Dkt. 61, at 5. CWG cites to *In re Goodman*, a case involving unfair labor practice charges against a company filed by the NLRB and a local union. 873 F.2d 598 (7th Cir. 1989). But the Funds do not seek to enforce an unfair labor practice claim. They seek to collect on a debt owed under the CBA. Without an unfair labor practice allegation, the NLRB has no role to play. *See Moriarty v. Larry Gl. Lewis Funeral Dirs. Ltd.*, 150 F.3d 773, 776 (7th Cir. 1998). The "Funds' claims are based on contracts rather than principles of labor law." *Id.*

## D.  SUCCESSOR LIABILITY[4] & ALTER EGO DOCTRINE

The Funds first assert that CWG is liable as Gianino Plastering's successor for the obligations incurred under the CBA.  Dkt. 57, pp. 17-22.  "The general common law rule of successor liability holds that . . . where one company sells its assets to another company, the latter is not liable for the debts and liabilities of the seller."  *Tsareff v. ManWeb Servs., Inc.*, 794 F.3d 841, 845 (7th Cir. 2015).  Even so, imposing successor liability for unpaid multi-employer pension fund contributions effectuates various congressional policies and goals to "hold withdrawing employers liable for their share of their plan's unfunded vested pension benefits[.]"  *Id.* at 845-46.  This goal is established by striking "a balance between the need to effectuate federal labor policies with 'the social interest in facilitating the market in the transfer of corporate or other productive assets.'"  *Id.* at 847 (quoting *Upholsterers' Intern. Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1325 (7th Cir. 1990)).

To impose successor liability for unpaid multi-employer pension fund withdrawal liability, a plaintiff must demonstrate that: "(1) the successor had notice of the prior claim against the predecessor prior to acquisition; and (2) there was 'substantial continuity in the operation of the business before and after the sale.'"  *Tasemkin*, 59 F.3d at 49 (quoting *E.E.O.C. v. G-K-G, Inc.*, 39 F.3d 740, 748 (7th Cir. 1994)).

Because CWG does not dispute the fact that Walter informed Curt about the judgment and dissolution of Gianino Plastering before Curt decided to start CWG, *see*

---

[4] CWG focused its brief on the single-employer doctrine rather than successor liability as alleged by the Funds.  Dkt. 61, pp. 3-4.  Nonetheless, CWG provided argument and facts in response to the Funds' alter ego argument, which is a substantially similar analysis to a successor liability claim.  The Court is therefore able to adequately address the merits of the parties' successor liability arguments.

Dkt. 64, ¶ 64, the Court must only determine whether or not there was a substantial continuity in the operation of Gianino Plastering following its dissolution, which will be "satisfied if no major changes are made in that operation."  *G-K-G, Inc.*, 39 F.3d at 748.

Determining "[s]ubstantial continuity requires a fact-centered analysis."  *Sullivan v. Running Waters Irrigation, Inc.*, 739 F.3d 354, 357 (7th Cir. 2014).  Relevant factors to determine substantial continuity include: (1) employing substantially all of the predecessor workforce; (2) employing the same supervisory personnel; (3) use of the predecessor's plant, machinery, and equipment; (4) manufacturing the same product or providing the same service; (5) honoring the predecessor's work orders and warranty claims; and (6) continuation of managerial personnel in similar positions.  *See Artistic Furniture* 920 F.2d at 1329; *see also N.L.R.B. v. Jarm Enters., Inc.*, 785 F.2d 195, 200 (7th Cir. 1986).

The Fund also alleges that CWG is liable as the alter ego of Gianino Plastering. The "alter ego doctrine focuses on the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets."  *Cent. States, Se. & Sw. Areas Pension Fund v. Sloan*, 902 F.2d 593, 596 (7th Cir. 1990) (quotation marks and citation omitted).  The various factors relevant to an alter ego claim are: (1) substantially identical management; (2) business purpose; (3) operation; (4) equipment; (5) customers; (6) supervision; and (7) ownership.  *See Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427, 433 (7th Cir. 1998).  The alter ego doctrine also requires a showing of unlawful motive or intent, which are "critical inquiries in an alter-ego analysis." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 85 F.3d 1282, 1288 (7th Cir. 1996).  As the Funds concede, these factors, aside from the additional

requirement of fraudulent intent, are markedly similar to those set forth in determining successor liability.

Even taking the facts in the light most favorable to the Funds, neither the successor liability nor the alter ego doctrine impute liability to CWG. Here (1) there was no continuity of management from Gianino Plastering to CWG; (2) no physical assets were transferred from one business to the other; (3) Curt provided the capital to start CWG, and there is no evidence he received a loan from Walter for the startup; (4) CWG used the same trucks, but paid for the leases, and the eventual purchase, with its own money; (5) CWG received the LJPP contract because of the purchaser's experience with Curt, not because of some perceived obligation to or understanding of the continuation of Gianino Plastering; and (6) that CWG received the contract with 546 Dunne was more fortuitous than evidence of continuity of operations. Further, although some employees were the same, Gildehaus did not work for Gianino Plastering as a plasterer, rather, Curt trained him to plaster after he started working for CWG. Moreover, Walter did not begin working for Curt until a year after Gianino Plastering failed. All of these factors, taken together, would prohibit a reasonable jury from finding successor or alter ego liability; there are simply too many differences between the entities.

## IV. **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiffs', Mark McCleskey, Trustee and Indiana State Council of Plasterers and Cement Masons Health and Welfare and Pension Funds, Motion for Summary Judgment, Dkt. No. 56; and **GRANTS** Defendant's CWG Plastering LLC's Motion for Summary Judgment, Dkt. No. 58. The Court will enter judgment accordingly.

IT IS SO ORDERED this 19th day of April, 2017.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Donald D. Schwartz
ARNOLD AND KADJAN, LLP
dds@aandklaw.com

William P. Hogan
HOGAN LAW FIRM
billhogan@sbcglobal.net